**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIN EILER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 3266 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| INNOPHOS INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Erin Eiler has filed a three-count amended complaint against defendant, alleging that it discharged her in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and state law. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss Eiler's claims. For the reasons set forth below, the motion is granted in part and denied in part.

## Facts

On June 6, 2005, Eiler started to work as a chemical laboratory technician for defendant, a manufacturer of phosphate products. (Am. Compl. ¶¶ 2-3, 5.) On two occasions in September 2005, Eiler was exposed to airborne chemicals at work, which made her ill. (*Id.* ¶¶ 6-9.) "On numerous occasions between December 2005 and February 2006," Eiler was exposed to carbon monoxide at work, which made her ill and, by February 15, unable to work. (*Id.* ¶¶ 10, 14.) On March 20, 2006, her doctor said she could return to work, if she wore protective gear. (*Id.* ¶ 15.) Defendant refused to let her to return to work without further testing, which it did not provide or facilitate. (*Id.* ¶ 16.) "Eiler was unable to obtain the testing in a timely fashion without [defendant's] cooperation,

preventing her from returning to work." (*Id.*) On May 26, 2006, eleven days before she would have been eligible for FMLA leave, defendant fired her. (*Id.* ¶¶ 18, 26.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In Count I, Eiler asserts that defendant's actions violate FMLA section 2615. That section makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To state a viable section 2615 claim, Eiler must allege that defendant is an employer covered by the Act, she was "eligible for the protections" of and "entitled to leave under" the Act, she gave adequate notice of her intent to take leave and defendant "denied [her] FMLA benefits to which [s]he was entitled." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Plaintiff affirmatively alleges that she was not eligible for FMLA leave either when she requested it or when she was fired. (*See* Am. Compl. ¶¶ 22, 24, 26.) Thus, her section 2615 claim must be dismissed.

The holding of *Reynolds v. Inter-Indus. Conference on Auto Collision Repair*, 594 F. Supp. 2d 925 (N.D. Ill. 2009), does not dictate a different result. The plaintiff in *Reynolds* was fired immediately after he told his employer that he would need FMLA leave in the near future. *Id.* at 926-27. He was not eligible for FMLA leave when he made that statement, but he would have been

2

eligible three months later, when his requested leave would begin. *Id.* at 926. As in this case, the defendant moved to dismiss the section 2615 claim because the plaintiff was not eligible for FMLA leave when he requested it or when he was fired. *Id.* at 927.

The *Reynolds* court noted that sections 2612 and 2617 of the statute, which entitle "eligible employee[s]" to leave and make those who violate section 2615 liable to "eligible employees affected," *see* 29 U.S.C. §§ 2612, 2617(a)(1), "provide . . . textual support" for defendant's argument. 594 F. Supp. 2d at 928. But the court said that support was vitiated by other sections of the statute:

> . . . [T]he FMLA also clearly contemplates the scenario in which an employee requests leave beginning on a foreseeable future date:
>
>> In any case in which the necessity for leave under subparagraph (A) or (B) of subsection (a)(1) of this section is foreseeable based on an expected birth or placement, *the employee* shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave . . . .
>
> 29 U.S.C. § 2612(e)(1) (emphasis added). . . . It would be illogical to interpret the notice requirement in a way that requires employees to disclose requests for leave which would, in turn, expose them to retaliation, or interference, for which they have no remedy. . . . Furthermore, the FMLA protects the "attempt" to exercise a right, which can only mean (in contrast with the actual exercise of that right) that the FMLA protects an employee who asks for leave even though he may not be eligible . . . .

*Id.* at 928-29. The court also said its interpretation was supported by the FMLA regulations, which require eligibility to be determined "as of the date the . . . leave is to start" and prohibit discrimination against prospective employees, "who are by definition not yet eligible for FMLA leave." *Id.* at 929 (quotation and emphasis omitted); *see* 29 C.F.R. §§ 825.110(d), 220(c). In accordance with its interpretation, the *Reynolds* court held that "under the FMLA, an employer may

3

not terminate an employee who has worked less than twelve months for requesting foreseeable future leave that the employee will be eligible for and entitled to at the time the leave is to begin." *Reynolds*, 594 F. Supp. 2d at 930.

Even if the *Reynolds* court's analysis is correct, an issue the Court need not decide, it would not help Eiler. Unlike the plaintiff in *Reynolds*, Eiler does not allege that she asked for leave that would start after she became FMLA eligible. (*See* Am. Compl. ¶¶ 5, 22.) Rather, she alleges that she asked for leave when defendant would not let her return to work on March 20, defendant denied her request, she did not return to work anytime thereafter and was fired on May 26. (*Id.* ¶¶ 15-18, 24, 27.) The only reasonable inference that can be drawn from these allegations is that Eiler asked for leave to forestall being fired, a goal that could not be accomplished by taking FMLA leave in June, when she became eligible for it. Because the amended complaint, viewed favorably to Eiler, does not support the inference that she requested leave that would start after she became FMLA eligible, she can take no refuge in *Reynolds*.

In short, plaintiff's allegations that she asked for immediate FMLA leave before she was eligible for it doom her section 2615 interference claim. *See Burnett*, 472 F.3d at 477; *Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) ("There can be no doubt that the request – made by an ineligible employee for leave that would begin when she would still have been ineligible – is not protected by FMLA [section 2615]"). Therefore, the Court grants defendant's motion to dismiss the FMLA claim.

In Count II, Eiler alleges that defendant terminated her because she complained about exposure to chemicals, which violates the state's policy of reducing indoor air pollution as reflected by the Illinois Indoor Air Quality Act. (Am. Compl. ¶¶ 31-33.) The Illinois Supreme Court has yet

4

to decide whether that policy can be the basis for a retaliatory discharge claim, but the court's other decisions suggest that it cannot.

The supreme court first recognized a cause of action for retaliatory discharge in *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 (Ill. 1979). The plaintiff in *Kelsay*, who had been fired for filing a worker's compensation claim, argued that her termination violated the public policy underlying that program. The *Kelsay* court agreed:

> The Workmen's Compensation Act . . . . provides for efficient remedies for and protection of employees and, as such, promotes the general welfare of this State. Consequently, its enactment by the legislature was in furtherance of sound public policy. We are convinced that to uphold and implement this public policy a cause of action should exist for retaliatory discharge.

*Id.* at 356-57 (citation omitted). Subsequently, in *Palmateer v. International Harvester Co.*, the supreme court expanded the tort to apply to an employee who had been fired for reporting a co-worker's criminal conduct to the police. 421 N.E.2d 876, 880 (Ill. 1981). The expansion was necessary, the court said, to implement the "clear public policy favoring investigation and prosecution of criminal offenses." *Id.*

A few years later, however, the court rejected a bid to expand the tort further, emphasizing its limited scope:

> Contrary to plaintiffs' assertion, however, this court has not, by its *Palmateer* and *Kelsay* decisions, "rejected a narrow interpretation of the retaliatory discharge tort" and does not "strongly support" the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy.

5

*Barr v. Kelso-Burnett*, 478 N.E.2d 1354, 1356 (Ill. 1985); *see Irizarry v. Ill. Cent. R.R. Co.*, 879 N.E.2d 1007, 1011 (Ill. App. Ct. 2007) ("[T]he current policy of our supreme court is to restrict and narrow rather than expand the range of the retaliatory discharge cause of action.")

Given this backdrop, the Court concludes that the Illinois Supreme Court would not recognize the retaliatory discharge claim asserted by Eiler. Though the Indoor Air Quality Act is clearly animated by the state's policy of reducing indoor air pollution, 410 Ill. Comp. Stat. 87/5, the Act specifically prescribes the method by which the policy will be implemented, through the development of "statewide indoor air quality guidelines" by the Illinois Board of Health. 410 Ill. Comp. Stat. 87/15; *see* 410 Ill. Comp. Stat. 87/10. Given the legislature's express decision to address indoor air pollution through administrative regulations, it is neither necessary nor appropriate to allow Eiler to assert a retaliatory discharge claim based on the Act.

That leaves Count III, Eiler's claim that defendant fired her to prevent her from filing a worker's compensation claim. (Am. Compl. ¶ 41.) Defendant's sole argument for dismissing this claim is that it does not contain "enough facts to state a claim for relief that is plausible on its face," as required by *Twombly*. *See* 550 U.S. at 570. Eiler alleges that: (1) she became ill from exposure to chemicals at defendant's plant and was receiving medical treatment; (2) she complained to defendant about the exposure and its effects; (3) her illness ultimately caused her to miss more than a month of work; and (4) defendant refused to let her return to work with protective gear and then terminated her. (Am. Compl. ¶¶ 10-15.) These allegations are sufficient to support the inference that defendant terminated Eiler to prevent her from filing a claim for worker's compensation.

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to dismiss [doc. no. 26], and dismisses with prejudice the claims Eiler asserts in Counts I and II of the amended complaint.  Count III is the only claim remaining in this suit.

**SO ORDERED.**                    **ENTERED:**

**February 12, 2010**

*Ronald A. Guzman*

———————————————————

**HON. RONALD A. GUZMAN**
**United States District Judge**